FILED

JAN 07 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| Plaintiff, | ) ) | **1:25 CR 00008** |
| v. | ) ) | CASE NO._____ |
| RUSSELL STEWART, | ) ) | Title 29, United States Code, Section 666(e); Title 18, United States Code, Section 1505 |
| Defendant. | ) ) | |

GENERAL ALLEGATIONS

**JUDGE LIOI**

At all times relevant to this Indictment:

**Federal Safety Standards Applicable to Confined Space Entry**

1. The Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 651 *et seq.*, is a federal law that seeks to assure safe workplaces and protect the Nation's workers from occupational injury and illness. The Occupational Safety and Health Administration (OSHA), a federal agency within the United States Department of Labor, administers and enforces the OSH Act, including through the promulgation of federal safety and health standards.

2. Under the OSH Act, employers must comply with the safety and health standards promulgated by OSHA. 29 U.S.C. § 654(a)(2). If an employer willfully violates an OSH Act safety and health standard, and the violation causes death to any employee, the employer has committed a federal crime. 29 U.S.C. § 666(e).

3. In 1993, OSHA promulgated a federal safety standard to protect workers from the hazards of entering confined spaces. 29 C.F.R. § 1910.146 (hereinafter the "Confined Space Standard" or "Standard"). A confined space is a space that (i) is large enough and so configured

that an employee can enter and perform assigned work, (ii) is not designed for continuous employee occupancy, and (iii) has limited or restricted means for entry and exit, such as a tank. 29 C.F.R. § 1910.146(b). A "permit space" includes a confined space that has one or more hazardous characteristics, including a space that "contains or has a potential to contain a hazardous atmosphere." *Id.* A "hazardous atmosphere" includes an atmosphere that may expose employees to the risk of death, serious injury, or illness, including from "atmospheric oxygen concentration below 19.5 percent" or "any other atmospheric condition that is immediately dangerous to life or health." *Id.*

4. Among other requirements, the Standard requires employers to provide at no cost to employees, properly maintain, and ensure that employees properly use atmospheric testing and monitoring equipment needed to comply with the requirement that the atmospheres inside of permit spaces be tested for oxygen deficiency and other hazards prior to entry. 29 C.F.R. §§ 1910.146(d)(4)(i) & (d)(5).

5. The Standard also requires employers to provide at no cost to employees, properly maintain, and ensure that employees properly use rescue and emergency equipment needed to rescue entrants from permit spaces and for preventing unauthorized personnel from attempting a rescue, including non-entry retrieval systems. 29 C.F.R. §§ 1910.146(d)(4)(viii) & (d)(9). "To facilitate non-entry rescue, retrieval systems or methods shall be used whenever an authorized entrant enters a permit space." 29 C.F.R. § 1910.146(k)(3). By requiring the use of non-entry rescue systems, the Standard protects both the entrant who needs to be rescued and prevents would-be rescuers from putting themselves in danger by entering a confined space to attempt a rescue. For vertical type permit spaces (spaces whose opening is above the entrant) more than 5 feet deep, the retrieval system must consist of a retrieval line that is attached on one end to a

harness used by the entrant and on the other end to a mechanical device in such a manner that rescue can begin as soon as the rescuer becomes aware that rescue is necessary. *Id.*

## The Defendant's Tank Cleaning Operation

6. Defendant RUSSELL STEWART was the owner and operator of Great Lakes Tank & Vessel, LLC ("GLTV"). GLTV provided industrial tank cleaning services at several locations, including locations in or around Lodi, Ohio, and Cleveland, Ohio, within the Northern District of Ohio. STEWART was an employer under the OSH Act.

7. COMPANY 1 was a chemical transportation company that used tanker trailers to carry chemicals to industrial facilities. COMPANY 1 operated a chemical truck terminal in Cleveland.

8. COMPANY 1 hired GLTV, through STEWART, to clean the insides of tanker trailers that COMPANY 1 used to transport chemicals. GLTV cleaned the tanker trailers in one of the truck bays located in the mechanic shop at COMPANY 1's Cleveland terminal.

9. STEWART knew that a tanker trailer is a confined space and knew that entry into a tanker was regulated by the OSHA Confined Space Standard requirements. STEWART knew that the Standard required the use of atmospheric testing equipment prior to tank entries and use of a non-entry retrieval system during tank entries.

10. In or about late June 2019, STEWART hired VICTIM 1 to be a tank cleaner for GLTV and assigned VICTIM 1 to work at COMPANY 1's truck terminal. During VICTIM 1's employment at GLTV, VICTIM 1 repeatedly and routinely entered tanks without testing the atmosphere for hazards prior to entry and without using a retrieval system.

3

11. STEWART knew that EMPLOYEE 1 made tank entries without testing the atmosphere and without using non-entry rescue systems, and thus willfully violated the requirements that he ensure that employees use such equipment.

## The Double Fatality in February 2020

12. At approximately 9:30 a.m. on February 20, 2020, VICTIM 1 entered a tank in COMPANY 1's Cleveland terminal without testing the atmosphere and without using a retrieval system. VICTIM 1 was overcome by an oxygen deficient atmosphere when VICTIM 1 entered the tank.

13. EMPLOYEE 1 was the attendant who was sitting next to the manhole on top of the tanker trailer to monitor VICTIM 1's entry. Less than one minute after VICTIM 1's entry, EMPLOYEE 1 saw that VICTIM 1 had collapsed in the tank and began screaming for help. Because VICTIM 1 was not using a retrieval system, there was no way for EMPLOYEE 1 or anyone else to attempt a non-entry rescue.

14. A few moments later, several COMPANY 1 employees ran to the tanker trailer and climbed the ladder to the top of the trailer. One of those employees, VICTIM 2, looked down into the tank and saw VICTIM 1 collapsed inside. Because there was no non-entry retrieval system being used, VICTIM 2 entered the tank to try to save VICTIM 1.

15. Soon after VICTIM 2 entered the tank, VICTIM 2 was also overcome by the oxygen deficient atmosphere and collapsed.

16. The Cleveland Fire Department was summoned and began a rescue of VICTIM 1 and VICTIM 2. By the time VICTIM 1 and VICTIM 2 were extracted from the trailer, each had suffered fatal injuries due to oxygen deprivation.

## COUNT 1
(Willful OSHA Violation Causing Death, 29 U.S.C. § 666(e))

The Grand Jury charges:

17. The factual allegations of Paragraphs 1 through 16 of this Indictment are realleged and incorporated by reference herein.

18. On or about February 20, 2020, in the Northern District of Ohio, Eastern Division, the defendant, RUSSELL STEWART, an employer, willfully failed to provide at no cost to employees, properly maintain, and ensure that his employees properly used testing and monitoring equipment needed to test conditions in a permit space to determine if acceptable entry conditions existed before entry, in violation of Title 29, Code of Federal Regulations, Sections 1910.146(d)(4)(i) & (d)(5), and that violation caused death to VICTIM 1 and VICTIM 2, whose identities are known to the grand jury, in violation of Title 29, United States Code, Section 666(e).

## COUNT 2
(Willful OSHA Violation Causing Death, 29 U.S.C. § 666(e))

The Grand Jury further charges:

19. The factual allegations of Paragraphs 1 through 16 of this Indictment are realleged and incorporated by reference herein.

20. On or about February 20, 2020, in the Northern District of Ohio, Eastern Division, the defendant, RUSSELL STEWART, an employer, willfully failed to provide at no cost to employees, properly maintain, and ensure that his employees properly used rescue and emergency equipment, including a non-entry retrieval system whenever a confined space entrant entered a permit space, in violation of Title 29, Code of Federal Regulations, Sections

1910.146(d)(4)(viii) & (d)(9), and that violation caused death to VICTIM 2, whose identity is known to the grand jury, in violation of Title 29, United States Code, Section 666(e).

COUNT 3
(Obstruction of Agency Proceeding, 18 U.S.C. § 1505)

21. The factual allegations of Paragraphs 1 through 16 of this Indictment are realleged and incorporated by reference herein.

**OSHA's Investigation of the Double Fatality**

22. OSHA is authorized to perform workplace investigations to carry out its mission of enforcing compliance with the OSH Act and improving workplace safety. 29 U.S.C. § 657. Whether an employer is aware of violations is material to OSHA's enforcement investigations.

23. From on or about February 20 until on or about August 13, 2020, OSHA investigated the February 20, 2020, double fatality. As part of the investigation, OSHA issued subpoenas to GLTV for documents related to the company's confined space safety practices. On various dates, including on or about June 22 and June 25, 2020, STEWART caused to be provided to OSHA documents that falsely purported to show confined space entry procedures, trainings, and practices at GLTV's operations in Ohio. Among other falsified documents that STEWART caused to be provided to OSHA were falsified confined space entry permits for both the Lodi and Cleveland locations, falsified documents purporting to show that safety trainings had been given to GLTV employees, and falsified documents purporting to show that safety procedures had been reviewed with GLTV employees.

24. As part of its investigation, OSHA interviewed and obtained testimony from STEWART about safety practices at GLTV's operations. STEWART provided OSHA with false and misleading information and testimony about confined space entry procedures, trainings, and practices at GLTV and his knowledge of the same. Among other false and misleading

6

testimony provided by STEWART to OSHA were: (i) statements falsely denying that STEWART saw VICTIM 1 enter a tank on the morning of February 20, 2020, a few hours before the deaths; (ii) statements falsely claiming that STEWART monitored and enforced his employees' compliance with confined space safety rules and procedures; and (iii) statements falsely suggesting that STEWART provided to his employees, properly maintained, and required his employees to use gas meters and retrieval systems.

25. From on or about February 20, 2020, through on or about August 13, 2020, within the Northern District of Ohio, Eastern Division, the defendant, RUSSELL STEWART, corruptly influenced, obstructed, impeded, and endeavored to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before OSHA, an agency of the United States, in violation of Title 18, United States Code, Section 1505.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.